STATE OF WEST VIRGINIA

*v.*

WALTER ALPHONZO FODDRELL

(No. 14725)

Decided September 23, 1980.

*Franklin D. Cleckley, J. Franklin Long* for plaintiff-in-error.

*Chauncey H. Browning*, Attorney General, *Lawrence R. Frail*, Assistant Attorney General, for defendant-in-error.

CAPLAN, JUSTICE:

The appellant, Walter Alphonzo Foddrell, was convicted of armed robbery in the Circuit Court of McDowell County and was sentenced to eighteen years in the state penitentiary. This is an appeal from that conviction.

The appellant and another were indicted for robbery by violence, commonly referred to as armed robbery, in McDowell County. The alleged robbery took place on April 27, 1973. An indictment was returned against Foddrell on July 10, 1973. He was arrested in Detroit, Michigan, in November, 1978 but refused to waive extradition. After a hearing he was extradited to this State where, after counsel was appointed to assist him, he stood trial in 1979.

At trial it was developed that the Pocahontas Fuel Company store at Jenkinjones, McDowell County, was robbed on April 27, 1973. There were two eye witnesses to the robbery. These witnesses, employees of the store were relieved of the company money, tied up and left in the "wareroom". The robbers made good their escape. One of the employees freed himself after approximately ten minutes, freed the other employee and called the police. One of the employees who, of course, was an eye witness to the robbery, informed the police as to descrip-

tion, size, dress, etc. of the robbers and described a car that was parked behind the store immediately preceding the robbery. This car was described as being a late model dark blue Chevrolet or Plymouth. One of the robbers was referred to during the robbery as "Eugene". In their search of the surrounding area, the police learned that the appellant was in the area at the time of the robbery and that he was driving a dark blue 1973 Chevrolet. It was also learned that he was accompanied by a friend by the name of "Eugene". The police searched the area for several days but could find neither the appellant nor his friend Eugene. After an indictment was returned, the record discloses no further action until Foddrell was arrested in Michigan and subsequently returned here. Both eye witnesses positively identified him as one of the participants in the April 27, 1973 robbery. The appellant admitted being in Jenkinjones on the day of the robbery but denies any knowledge or involvement therein. In fact, he claims that he had left Jenkinjones prior to the time the robbery allegedly occurred. Nevertheless, the appellant was convicted and sentenced to eighteen years in the state penitentiary. While numerous errors are assigned on this appeal, consideration of the principal assignments, as follows, will suffice to properly dispose of this case.

First, should the grand jury minutes have been made available to the appellant; second, was the in-court identification of the then defendant proper; third, did the court comment improperly on the evidence; fourth, was the defendant denied effective assistance of counsel; and fifth, did the State use due diligence in its efforts to find the appellant and afford him a speedy trial.

The appellant contends that he was entitled to access to the notes of the grand jury. The record discloses that the court denied him any information in relation to the grand jury's deliberations. The transcript shows that the appellant's counsel sought information as to who appeared and testified against his client at the grand jury proceedings. This information was furnished. The transcript further shows that no records, transcripts,

tapes or otherwise, were made at the grand jury proceedings. This fact conclusively confirms the unavailability of any grand jury notes.

The first assignment of error is without merit and lends no aid to the appellant. It is undenied that no notes were made of the grand jury proceedings. The principal thrust of the appellant's assignment appears to be that the court's effort to determine whether or not grand jury notes were made was inadequate. We find that the court made proper inquiries to arrive at that determination. There was no abuse of discretion and it is clear from the record that no such notes existed. No law was cited and we find none that supports this assignment.

The appellant also contends that the in-court identification of him by one of the eye witnesses was improper in that it was tainted due to a suggestive photograph. The photograph was not offered in evidence but was shown to this witness to see if the person in the photograph was the one who participated in the robbery. The identification was for purposes of extradition and it was necessary that he be identified as having been involved in the robbery some four or five years earlier. It is true that a single photograph of the appellant was shown to this witness and that he was not shown multiple photographs and asked to pick out the person who robbed him. At the trial no photograph was offered in evidence. The witness positively, without equivocation, identified petitioner as one of the participants. In Point 3 of the Syllabus of *State v. Casdorph*, 159 W.Va. 909, 230 S.E. 2d 476 (1976), we said, "In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification a court must look to the totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of

certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." See also *Neil v. Biggers*, 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972); *State v. McNeal*, 162 W.Va. 550, 251 S.E.2d 484 (1979); *State v. Kennedy*, 162 W.Va. 244, 249 S.E.2d 188 (1978). The witness in the instant case was a former serviceman where he served as a military policeman. Taking all of the above into consideration, we must conclude that the in-court identification was proper in the instant case. Assuming that the in-court identification by this witness was improper, we still have the positive identification of the appellant by the other eye witness who identified him from observation at the time of the crime. This alone would have been sufficient to have left the question of identification to the jury. The "tainted" identification would have therefor constituted harmless error at most.

The appellant contends that the trial court committed prejudicial error by making improper comments on the weight of the evidence. One of the participants in the robbery was described as wearing thick glasses. Defense counsel asked the defendant if he wore glasses and if he had ever worn glasses. The petitioner answered "No" to both questions. He was then given a newspaper and asked to read the small print of an advertisement, which he did. The appellant's counsel then offered the paper in evidence "to show he does not wear glasses and never has, and I would like the jury to see that he can read this fine print." The court permitted the introduction of the newspaper but commented that it was being admitted "for the purpose to show that he read the paper without glasses, but the mere fact that he read that I don't think ... would be proof that he has never worn glasses ..." We find that the court's comment does not constitute reversible error.

Next, the appellant complains of the denial of a speedy trial. He contends that by reason of the five to six year delay that it was incumbent upon the State to prove that it used due diligence in seeking to find him and to afford him a speedy trial.

The record shows that Foddrell was indicted in July, 1973 but that he was not apprehended until November, 1978. There is no showing in the record before us as to whether or not a capias was issued to effect his arrest prior to his arrest in Michigan. The record does disclose that while the appellant had lived in the Jenkinjones area prior to the alleged robbery at the time of the robbery he was living in Michigan. He admits that he had heard that local and state police officials were looking for him but that he did not know that an indictment had been returned against him. He admits that he made no effort to get in touch with the authorities. He maintains that he made no effort to hide and that many people in the McDowell County area knew his whereabouts. We said in *State v. Cox*, 162 W.Va. 915, 253 S.E.2d 517 (1979) that a "delay of approximately two and one-half years between indictment and trial clearly warrants further inquiry." The delay in the instant case was approximately six (6) years.

The right to a trial without unreasonable delay is basic in the administration of criminal justice and is guaranteed by both the state and federal constitutions. W.Va. Constitution, Article III, § 14; *U.S.* Constitution, Amendment VI. We have held that it is the duty of the prosecution to provide a trial without unreasonable delay rather than the duty of the accused to demand a speedy trial. *State ex rel. Stines v. Locke*, 159 W.Va. 292, 220 S.E.2d 443 (1975) and *State ex rel. Farley v. Kramer*, 153 W.Va. 159, 169 S.E.2d 106 (1969). This Court has also held that the accused may not count in his favor "any term of the court which occurred in part during the time he was without the jurisdiction of the court." *State ex rel. Smith v. DeBerry*, 146 W.Va. 534, 120 S.E.2d 504 (1961). In a very recent case, *State ex rel. Boso v. Warmuth*,___ W.Va. ___, 270 S.E.2d 631 (1980) this Court in Point 3 of the Syllabus said:

> Under the "Three Term Rule" W.Va. Code 62-3-21 (1959), where an accused has been indicted in West Virginia and fled elsewhere, the defendant can only assert lack of reasonable diligence on

the part of the State in procuring him for trial if the defendant himself has not resisted the State's efforts to return him for trial.

With respect to a speedy trial claim, four factors should be considered. These factors were set forth in *Barker v. Wingo,* 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972) and in *State v. Cox,* 162 W.Va. 915, 253 S.E.2d 517 (1979). They are (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his rights; and, (4) prejudice to the defendant. The record in the instant case does not contain sufficient information from which these questions can be answered. We therefore must remand this case for a hearing to determine whether or not the State did use due diligence in seeking the appellant so as to afford him a speedy trial in conformance with his constitutional rights. In determining whether due diligence was used, it may be significant as to whether or not a capias was issued for his arrest upon his failure to respond to the indictment.

Other assignments of error were made and we have reviewed them in detail. With the possible exception of some specific assignments pertaining to ineffective counsel, we have discussed and decided the principal errors. As to those specific examples of alleged ineffective counsel, we cite *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974); *Cannellas v. McKenzie,* 160 W.Va. 431, 236 S.E.2d 327 (1977); and *Scott v. Mohn,* ____ W.Va. ____, 268 S.E.2d 117 (1980) wherein we said:

In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error.

We view nothing in the numerous examples of alleged ineffective assistance of counsel that would warrant a reversal of this case on that ground.

For the reasons heretofore stated this case is remanded for the sole purpose of holding a hearing to determine whether or not the State used due diligence in seeking the appellant so as to afford him a speedy trial. If, after hearing, it is determined that due diligence was not exercised, he should be forever disharged. On the other hand, if it be determined that due diligence was used, the appellant must be remanded to the proper authorities to serve his sentence.

*Remanded with directions.*