297 S.E.2d 829

**STATE of West Virginia**

v.

**Walter Alphonzo FODDRELL.**

**No. 15495.**

Supreme Court of Appeals of
West Virginia.

Nov. 18, 1982.

Silas B. Taylor, Asst. Atty. Gen.,
Charleston, for appellee.

J. Franklin Long, Bluefield, for appellant.

McGRAW, Justice:

Walter Alphonzo Foddrell appeals from a final order of the Circuit Court of McDowell County which remanded the appellant to the state penitentiary to complete the sentence of imprisonment previously imposed upon him upon his conviction of the crime of armed robbery. The order of which the appellant complains was entered by the circuit court on February 4, 1981, following a hearing at which the only issue was whether the appellant was afforded a speedy trial. The appellant contends that the lower court erred in finding that the State used due diligence in seeking him for trial. We find no error in the circuit court's judgment, and we affirm.

On April 27, 1973, the Pocahontas Fuel Company store at Jenkinjones, McDowell County, was robbed. An indictment charging armed robbery was returned against the appellant and another individual by the McDowell County Grand Jury on July 10, 1973. A capias was issued for the appellant on July 14, 1973. The appellant was arrested on a fugitive warrant in Detroit, Michigan, on November 4, 1978 and was extradited to West Virginia to stand trial on the armed robbery charge in March 1979.

On May 15, 1979, the appellant was found guilty by jury verdict and was subse-

quently sentenced to a term of eighteen years imprisonment in the state penitentiary. The appellant brought an appeal in this Court alleging error at trial and denial of his right to a speedy trial. We affirmed the appellant's conviction but remanded the case for the sole purpose of holding a hearing to determine whether the State used due diligence in seeking the appellant so as to afford him a speedy trial. *State v. Foddrell*, 165 W.Va. 540, 269 S.E.2d 854 (1980).

A hearing was held on January 27 and 28, 1981. The appellant sought to demonstrate that the police and the prosecuting authorities could have easily discovered his whereabouts in the five and one-half years prior to his arrest if they had used reasonable diligence. The appellant introduced testimony that he had lived openly in Detroit under his proper name from the day of the robbery until his arrest and that numerous McDowell County residents knew or could have easily discovered his whereabouts and would have reported this information to the police if they had been asked to do so. The State introduced testimony detailing its unsuccessful efforts to locate the appellant between April 1973 and November 1978.

At the conclusion of the evidence the circuit court found that the State had used reasonable diligence to secure custody of the appellant for trial and that the delay between the indictment and trial had been occasioned by the appellant's refusal to assert his right to a speedy trial. The court found that the appellant had not been prejudiced by the delay. Consequently the court concluded that the appellant had not been denied his right to trial without unreasonable delay and ordered him remanded to the state penitentiary to serve the remainder of his sentence. The findings and the conclusions of the circuit court were incorporated into an order entered February 4, 1981. It is from this order that the appellant brings this appeal.

The law with respect to speedy trial claims was restated by this Court in the appellant's original appeal.

The right to a trial without unreasonable delay is basic in the administration of criminal justice and is guaranteed by both the state and federal constitutions. W.Va. Constitution, Article III, § 14; U.S. Constitution, Amendment VI. We have held that it is the duty of the prosecution to provide a trial without unreasonable delay rather than the duty of the accused to demand a speedy trial. *State ex rel. Stines v. Locke*, 159 W.Va. 292, 220 S.E.2d 443 (1975) and *State ex rel. Farley v. Kramer*, 153 W.Va. 159, 169 S.E.2d 106 (1969).

*State v. Foddrell, supra* 165 W.Va. at 545, 269 S.E.2d at 858.

The standard for determining whether a defendant has been denied his constitutional right to a speedy trial was set forth in *State v. Cox*, 162 W.Va. 915, 253 S.E.2d 517, 519 (1979).

The controlling law on this issue is found in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). There the United States Supreme Court adopted a balancing approach for speedy trial claims in which the conduct of the government and the defendant are weighed against one another on a case-by-case basis. Four factors are to be considered in this balancing process: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his rights; and (4) prejudice to the defendant. The Court made it palpably clear in *Barker* that it regarded none of the factors alone as either necessary or a sufficient condition to support a finding that there has been a deprivation of the right to a speedy trial.

The appellant does not contend that the circuit court failed to apply this four-factor test to the evidence adduced at the hearing below.* Rather he asserts that the evidence does not support the lower court's conclusion that the State acted with due

---

* The threshold question in this case, the length of the delay, was resolved in the appellant's favor by this Court's decision to remand the case for an evidentiary hearing on the speedy trial issue. Clearly, a delay of almost six years between indictment and trial warrants further inquiry.

diligence to secure custody of the appellant for trial.

The evidence shows that the police interviewed friends and relatives of the appellant in the McDowell County area on the day of the crime in an attempt to locate him. Based on information received from these interviews, the state police contacted the Martinsville, Virginia authorities to determine if the appellant was visiting his mother in that city. Within days, the Martinsville police informed the West Virginia investigators that the appellant had visited his mother the night of the robbery and had left Martinsville the next morning.

From their questioning of local residents, the investigators learned that the appellant might be in Detroit or New York. The state police entered the appellant's name and description in the NCIC computer, a nation-wide law enforcement communications system, on the day of the crime and placed a more detailed entry in the computer after they learned the appellant had left Martinsville. The state police contacted the FBI and a capias was issued several days after the indictment was returned.

In 1975, a New York City police detective contacted the state police in McDowell County about the appellant. He asked if the appellant was wanted in West Virginia for armed robbery and stated that he could locate the appellant if necessary. A state trooper testified that the detective had stated that he was making the inquiry at the appellant's request. At the detective's request, the prosecuting attorney's office wrote a letter which detailed the charges against the appellant and indicated the State's intent to seek extradition if the appellant were apprehended. The prosecuting attorney received no response to this letter. Local law enforcement officials testified that they continued to inquire casually of McDowell County residents as to the appellant's whereabouts throughout the five and one-half years between the robbery and the appellant's arrest without success.

The appellant attempted to show that he had made no attempt to hide from the West Virginia authorities. He testified that he had lived in Detroit openly from 1969 until his arrest in 1978, that he had changed addresses only once, in 1974, and that his proper name, address and phone number had appeared every year in the Detroit telephone directory. The appellant testified that he had used his proper name, address and Social Security number to apply for and receive a Michigan driver's license and vehicle registration, a business license and unemployment benefits, and to file yearly city, state and federal taxes. The appellant stated that he was employed by the Chrysler Corporation during his stay in Detroit, except for a brief lay-off in 1970, and that he had been active in the Boys Club and the Jaycees in Detroit. He testified that as a result of his employment and his involvement with the Boys Club, he had been required to submit periodically to security checks, none of which revealed any outstanding felony or misdemeanor warrants from West Virginia. The appellant admitted that he had made no attempt to secure any documentary evidence to corroborate any of these assertions, and none was introduced at the hearing.

The appellant also testified that he had visited friends in McDowell County several times between 1973 and 1978 and that he had visited his mother in Martinsville, Virginia at least once every year, staying at least three days each time. He stated that during this period he had seen many people from McDowell County who had either moved to Detroit or visited relatives there. The appellant testified that he attended Gary District High School reunions in Detroit and New York and placed his name and address on a list circulated among those attending. He also stressed that during this period he had obtained from the McDowell County Courthouse a copy of his birth certificate which was mailed to his address in Detroit.

In addition, the appellant introduced the testimony of numerous witnesses, all residents of McDowell County area and familiar with the appellant and his family, who testified that they would have assisted the police in locating the appellant. Several of these witnesses testified that they did not

know the appellant's whereabouts but could have referred the police to the appellant's brother who lived in the area. Others, including the appellant's brother, testified that they knew the appellant lived in Detroit and could have obtained his address from relatives. Three witnesses testified that they knew the appellant's address and telephone number in Detroit. The majority of these witnesses testified that they were never interviewed by the police concerning the appellant's involvement in the robbery. Others admitted that they had been questioned by the police but stated that they had never been asked if they knew the appellant's whereabouts. Those witnesses who had directly contradicted the testimony of the investigating officers maintained contact with the appellant during the five-year interval between the indictment and the arrest testified that they were aware that the appellant was a suspect in the robbery, but that they never discussed the robbery with the appellant.

The appellant testified that he was unaware that he had been indicted until his arrest in 1978. He stated that he knew the West Virginia police were looking for him but that he thought he was only "wanted for questioning". The appellant testified that he thought the West Virginia authorities wanted him to testify against his brother-in-law, who was also a suspect in the robbery. The appellant stated that he made no attempt to contact the McDowell County investigators because he didn't want to testify against his wife's brother. The appellant denied that he had been in New York in 1975 or that he had asked the detective to call the state police in McDowell County to determine whether he was wanted for armed robbery.

Finally, the appellant testified that as a result of the delay between indictment and trial, he was unable to obtain the testimony of a witness who had died during the interim. The record shows that the defense would have called this witness to impeach the credibility of a prosecution witness who had testified that she was with the appellant on the day of the crime and had taken him to the deceased's home where she observed clothing in the trunk of the appellant's car which matched the description of the suspect given by the robbery victims. At trial the appellant denied knowing the deceased witness and could not recall being with the prosecution witness on the day of the trial.

Applying the four-factor test stated in *State v. Cox, supra,* we are unable to say that the circuit court erred in determining that the State had used reasonable diligence to secure custody of the appellant for trial. Although a delay of almost six years between indictment and trial clearly warrants further inquiry, it does not appear that the delay in bringing this appellant to trial was occasioned by the neglect of the police or prosecuting authorities. The police interviewed numerous persons in McDowell County following the robbery in an attempt to discover the appellant's whereabouts. The investigator reports that he was in Martinsville, Virginia and notified other police departments that the appellant was a fugitive through the NCIC computer and contact with the FBI. A capias was issued. The prosecuting authorities responded immediately to the 1975 report that the appellant was in New York, indicating their intent to seek extradition, and acted without delay to obtain custody of the appellant upon being notified of his arrest in Detroit in 1978.

Although the appellant presented the testimony of numerous witnesses who testified that they could have aided the police in locating the defendant if they had been asked to do so, no evidence was introduced to show that the investigating authorities knew or had reason to know that the majority of those witnesses were privy to such information. The other witnesses were questioned by the police but either could not remember whether they were asked if they knew the appellant's whereabouts or denied having been asked that question, contradicting the testimony of the investigating officers. None of the appellant's witnesses volunteered any information to the police although they were aware that he was a suspect in the case.

The appellant, on the other hand, did nothing to assert his right to a speedy trial,

even though he was aware that the West Virginia authorities were looking for him. Although the appellant testified that he thought he was wanted only for questioning, by his own admission he made no attempt to contact the McDowell County authorities to clear up the matter. Nor did the appellant attempt to obtain documentary evidence to support his statements that he lived openly in Detroit using his proper name and address or his connections with organizations in the Detroit area.

Finally, the appellant failed to show that he was prejudiced by the delay. There was no showing that the deceased witness would have testified or what exactly her testimony would have been had she testified. Even if we assume that her testimony would have supported the appellant's assertions at trial, there was no showing that such testimony was critical to the appellant's defense at trial. The prosecution witness whose credibility the appellant would have sought to impeach by the deceased witness's testimony was not involved in or a witness to the crime itself and merely corroborated testimony offered by other witnesses for the State regarding the appellant's presence in McDowell County on the afternoon of the robbery, a description of the appellant's clothing and vehicle and the fact that he was in the company of his brother-in-law that day.

Consequently we conclude that the circuit court did not err in finding that the State used reasonable diligence in seeking the appellant for trial or in concluding that the appellant was not deprived of his right to a trial without unreasonable delay, and we affirm.

Affirmed.