753 S.E.2d 753

**STATE of West Virginia ex rel Mark PLANTS, Prosecuting Attorney of Kanawha County, West Virginia, Petitioner**

v.

**The Honorable Carrie WEBSTER, in her Official Capacity as Judge of the Circuit Court of Kanawha County, West Virginia, and David Washington Kinney, Respondents.**

No. 12–0404.

Supreme Court of Appeals of West Virginia.

Submitted May 30, 2012.

Decided June 12, 2012.

Mark Plants, Prosecuting Attorney, Erica N. Lord, Esq., Benjamin Freeman, Esq., Assistant Prosecuting Attorneys, Charleston, WV, for Petitioner.

J. Timothy DiPiero, Esq., Olubunmi T. Kusimo, Esq., Katherine R. Snow, Esq., Charleston, WV, for Respondent David Washington Kinney.

PER CURIAM:

The petitioner, Mark Plants, Prosecuting Attorney for Kanawha County, West Virginia, invokes this Court's original jurisdiction in prohibition to challenge the March 8, 2012, ruling of the Circuit Court of Kanawha County barring the introduction of certain shell casings found at the scene of the crime and firearms and ammunition seized from a residence associated with respondent David Washington Kinney. The evidence was suppressed as a sanction for the State's admitted failure to make the shell casings available to the defense for inspection and possible testing. Based upon the limited record [1] before us, the arguments of the party and our review of the applicable precedent, we find that while the State's conduct was troublesome, the circuit court failed to properly analyze the necessary factors for sanctions against the State pursuant to our holdings in *State ex rel. Rusen v. Hill,* 193 W.Va. 133, 454 S.E.2d 427 (1994). We therefore grant the requested writ of prohibition and prohibit the enforcement of the May 29, 2012, order of the circuit court that excluded the shell casings from evidence, as well as other ammunition, magazines and firearms seized from the home of Carol Bridges.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The petitioner is the prosecuting attorney for Kanawha County. The respondent, Carrie Webster, is a circuit judge in Kanawha County. The respondent, David Washington Kinney, is a defendant in a murder prosecution pending in Kanawha County, West Virginia. Respondent Kinney was indicted for first degree murder on October 22, 2010. He was taken into custody upon the indictment and incarcerated without bond. On March 22, 2011, he was released on $250,000 bond, with the condition of home confinement. He remains on home confinement.

Respondent Kinney is accused of the first degree murder of Jeremy Jean–Courtney

---

1. Inasmuch as this is an original jurisdiction proceeding and not an appeal, we do not have the benefit of the entire record of the criminal proceeding before us. The actual order that the petitioner seeks to prohibit was belatedly entered on May 29, 2012, on the eve of the oral argument before this Court. The petitioner sought a writ of prohibition using the order prepared by respondent Kinney's counsel and approved for entry by the State and submitted to the circuit court for entry. The State acknowledged that because there was a pending trial date in April 2012, it had little choice but to file the writ of prohibition without having a signed copy of the order.

Between the filing of the writ of prohibition on March 30, 2012, and the oral argument of this case on May 30, 2012, some two months, the respondent judge rewrote the order, making changes to the original order submitted by the parties for entry. For example, the proposed order agreed upon by the State and respondent Kinney for entry did not include a finding that the shell casings were intentionally withheld by the State from respondent Kinney. The entered order makes this finding. Other differences include the length of the order; the order submitted by respondent Kinney was nine pages in length but the order entered was eighteen pages in length. The entered order also contained additional findings including one that the State was grossly negligent in its handling of and accounting for the shell casings and other evidence.

The transcript of the hearing at which the circuit court announced its findings and conclusions was filed after the oral argument of this matter. Upon review of the transcript in its entirety, we note that the respondent judge likewise did not announce a finding during the hearing about the intentional nature of the withholding of the shell casings, or findings of gross negligence. At the hearing, the respondent judge stated "the Court does not find the State acted in bad faith but does believe the State and its agents, specifically the Charleston Police Department who conducted the investigation, was negligent in its failure not only to preserve the evidence, but in its failure to account for the evidence."

Parsons. Mr. Parsons was shot and killed on July 4, 2010, while in a vehicle at the intersection of Park Avenue and Virginia Street on the west side of Charleston. He died at the scene. Law enforcement officers recovered four 10mm shell casings from the area surrounding the car that were believed to have been from the weapon used to kill the victim.

In the course of the investigation into the murder of Mr. Parsons, a search warrant was issued for the home of Carol Bridges. Ammunition and firearms were seized pursuant to that search warrant. Admitting that its case is largely circumstantial, the State contends that few persons other than law enforcement officers or military personnel utilize the type of firearm or ammunition matching the shell casings found at the crime scene. The State further represents that some of the ammunition seized at the home of Carol Bridges matches the shell casings found at the murder scene, thus connecting respondent Kinney to the crime. The State argues that all of this evidence is integral to their case against respondent Kinney and asserts that the circuit court's suppression of this evidence amounted to a *"de facto"* dismissal of the State of West Virginia's case.

The four shell casings are the subject of the order for which the petitioner seeks this Court's intervention. At respondent Kinney's arraignment, he orally moved the circuit court for discovery, including the opportunity to inspect the shell casings. Written motions were filed on November 3 and November 16, 2010. The discovery motions were granted, including the request to examine the physical evidence associated with the crime. The State does not contest Mr. Kinney's entitlement to this information.

Respondent Kinney filed another motion in September 2011, again seeking the right to physically examine the shell casings and to examine the decedent's vehicle. The State did not object to the discovery requests. By order entered September 20, 2011, the circuit court granted this motion. Respondent Kinney's counsel asserts that he made repeated requests to see this physical evidence. In January 2012, the State informed respondent Kinney's counsel that the shell casings were

missing. On January 26, 2012, the State filed a Notice of Lost Evidence. In response to that notice, respondent Kinney filed a motion to dismiss the indictment, or in the alternative, to suppress any evidence connected to the shell casings or the decedent's vehicle.

The circuit court held a status conference on February 24, 2012, at which the State advised the court and respondent Kinney's counsel that the shell casing were lost and that the vehicle in which the victim died had been released from the State's possession. The trial of this matter was continued to April 9, 2012, and a pre-trial conference was scheduled for March 8, 2012. Three days prior to the pre-trial conference, on March 5, 2012, the State advised respondent Kinney's counsel that the shell casings were found. It was disclosed through testimony at the pre-trial conference that the shell casings had never been lost but had been in the possession of the State Police for testing for approximately one year. Instead of being filed under respondent Kinney's name, they had been filed under the decedent's name.

At the pre-trial conference, the lead detective on this case testified as to the timeframe and location of the shell casings. On August 16, 2010, shortly after the murder, the shell casings were taken to a laboratory in London, England, where testing was performed. The shell casings were returned to the United States and maintained in the Charleston Police Department's custody. On September 22, 2010, the shell casings were submitted to an examiner in Texas for further testing. The evidence was returned by mail in October 2010 and stored again in the police department. In January 2011 the shell casings were sent to the West Virginia State Police laboratory in South Charleston for further examination. It was at the State Police facility that the subject evidence was mislabeled with the decedent's name, not respondent Kinney's name.

At the pre-trial conference, the circuit court also addressed the respondent Kinney's motion to dismiss the indictment or, alternatively, his motion to suppress the evidence associated with the shell casings and the decedent's vehicle. Respondent Kinney ar-

gued that his due process rights had been violated by the failure of the State to allow for the examination of the shell casings and other physical evidence. Furthermore, respondent Kinney argued that the State's breach of its duties to allow discovery and to preserve the shell casings and vehicle was negligent and in bad faith, compounded by the State's subsequent loss of the shell casings and release of the decedent's vehicle. Respondent Kinney argued that this evidence was highly probative and that there was no substitute for that evidence.[2] He also argued that the State had failed to preserve potentially exculpatory evidence, that he was entitled to discovery of these items and that the State had breached its duties to preserve the shell casings and the vehicle. Respondent Kinney argued that all of these errors required the dismissal of the charges, or in the alternative, the suppression of the evidence.

The circuit court weighed those factors and concluded that the State's delays in getting the shell casings to the defendant's expert warranted exclusion of that evidence. The order also excluded from evidence the firearms and ammunition seized in July 2010 on relevancy grounds. The State concedes that without the shell casings from the scene of the crime, there is no connection between the ammunition or firearms seized pursuant to the search warrant.

An order was prepared for the court's entry. On March 30, 2012, the petitioner filed the instant writ of prohibition, citing error in the circuit court's ruling to suppress the evidence of the shell casings as well as the suppression of the other ammunition, the magazine and the firearm seized from the home of Carol Bridges. The respondents filed a written response to the State's petition on April 5, 2012. On April 6, 2012, this Court issued a rule to show cause directing the respondents to show cause, if any, why the requested writ should not be issued.

## II.

### STANDARD OF REVIEW

We have repeatedly explained that

[i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). Further, we have held,

A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va.Code, 53–1–1.

Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977).

Using these standards of review, we examine the petitioner's request for a writ of prohibition.

## III.

### DISCUSSION

At issue is the ruling of the circuit court regarding the sanctions imposed against the State as a result of the State's failure to

---

**2.** Law enforcement had photographs of the shell casings as well as photographs of the vehicle in which trajectory rods had been placed to track the paths of the fired bullets.

comply with discovery requests in a criminal proceeding. The State does not argue that the discovery requests were improper; it appears that all along the State recognized that it had a duty to disclose the items requested by respondent Kinney and also to maintain the safety and integrity of this physical evidence. The ruling was in response to a motion to dismiss the indictment, or in the alternative, to suppress the evidence that had been kept from respondent Kinney's inspection, testing and view.

As authority for the ruling, the circuit court relied upon *State v. Osakalumi*, 194 W.Va. 758, 461 S.E.2d 504 (1995). In that case, this Court determined the proper course of action when discoverable evidence is properly sought by the defendant, but is unavailable at the time the defendant makes his request. We held,

> When the State had or should have had evidence requested by a criminal defendant but the evidence no longer exists when the defendant seeks its production, a trial court must determine (1) whether the requested material, if in the possession of the State at the time of the defendant's request for it, would have been subject to disclosure under either West Virginia Rule of Criminal Procedure 16 or case law; (2) whether the State had a duty to preserve the material; and (3) if the State did have a duty to preserve the material, whether the duty was breached and what consequences should flow from the breach. In determining what consequences should flow from the State's breach of its duty to preserve evidence, a trial court should consider (1) the degree of negligence or bad faith involved; (2) the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence produced at the trial to sustain the conviction.

Syl. pt. 2, *State v. Osakalumi*, 194 W.Va. 758, 461 S.E.2d 504.

In terms of the first prong of the *Osakalumi* test, the circuit court found that the shell casings were relevant evidence, material to both the prosecution and defense, and was subject to disclosure and discovery pursuant to W. Va. R.Crim. P. 16. The circuit court further found that the second prong of the *Osakalumi* inquiry was met by concluding that the State had a duty to preserve the shell casings, and that the duty was breached by the State's representations that the shells were lost and later found. The circuit court's disdain for this development was reflected in the order. The order stated, *inter alia,*

> In the instant case, Defendant made repeated requests to view the discovery for over a year, only to be told that the shell casings were lost in January 2012. Then, three days before the scheduled pre-trial on March 8, 2012, the State not only informed Defendant the shell casings were available for viewing, but the shell casings were found in the State's custody and had been at the West Virginia State Police Lab for approximately one year——a large portion of the time prior in which the Defendant made his requests to view the evidence.

The circuit court also found that the Charleston Police Department and/or the Kanawha County Prosecutor's office either intentionally withheld the shell casing evidence and/or committed gross negligence in the handling of the same. In the order, the circuit court stated, *inter alia,*

> Following oral argument and upon further examination of the record herein, the Court FINDS that sufficient evidence has been established for this court to CONCLUDE that the Charleston Police Department and/or the Kanawha County Prosecutor's office either intentionally withheld the shell casing evidence, based significantly on testimony from Detective Hunt, wherein he states that the Kanawha County Prosecuting Attorney's office called and directed him to send the shell casings to the crime lab in January, 2011. It was not until January, 2012 that the Prosecuting Attorney advised that the evidence was even missing and did not advise defense counsel or the court that it was even at the crime lab. It was only days before the pretrial hearing in March, 2011 that the information was disclosed to the court or the defendant's attorney. Accord-

ingly, the Court finds that the intentional or grossly negligent failure to timely disclose said evidence to the Defendant for inspection was unreasonable and prejudicial to the Defendant.

The circuit court further found that the State committed gross negligence for failing to timely disclose to respondent Kinney the whereabouts and location of the evidence.

We note from the outset that our holdings in *Osakalumi* upon which the circuit court based its findings and conclusions, are not applicable to the facts in the case at bar. *Osakalumi* dealt with lost evidence. In the *sub judice*, the evidence was not lost but was merely misfiled or misplaced. We believe the correct focus of the circuit court's inquiry should have started with our holdings in *State ex rel. Rusen v. Hill*, 193 W.Va. 133, 454 S.E.2d 427 (1994), which established a standard for analyzing and reviewing discovery abuses in criminal cases, including the failure to comply with previously ordered discovery requests on the part of a criminal defendant. We recognized that the decision on the part of the circuit court to sanction discovery abuses was discretionary. In terms of what the circuit court must review in determining whether to sanction a discovery abuse, we said:

> We also believe several factors must be weighed in determining whether the exercise of discretion in cases such as this is appropriate. Those factors include, but are not limited to:
>
> (a) the importance and materiality of the information that was not disclosed;
>
> (b) the ability of the party to try the case without the information or the nature of the prejudice claimed by the failure to comply with the discovery order;
>
> (c) the extent to which a continuance or other lesser relief would delay the trial or otherwise impact adversely the administration of justice;
>
> (d) the degree of negligence involved and the explanation of the party's failure to comply with a discovery request;
>
> (e) the effort made by the party to comply with the discovery order;
>
> (f) the number of times the circuit court ordered the party to comply with the discovery order; and
>
> (g) in some cases, the severity of the offense.

*State ex rel. Rusen v. Hill*, 193 W.Va. at 140, 454 S.E.2d at 434 (1994).

We further elaborated on what the role of the circuit court was when these matters were brought to the court's attention;

> Further expansion of these factors is necessary. Once a circuit court receives a motion requesting sanctions or relief for discovery violations, the circuit court should order, to the full extent required by the discovery rules or the court order, an immediate disclosure. The relief that is appropriate initially will depend to a large degree on the reason disclosure was not timely made and the prejudice resulting from the failure to provide timely discovery. Similarly, the circuit court should review the frequency and force of the defendant's objections or motions as opposed to attaching significant weight to a pure *pro forma* protest. The preferred relief where the party responsible for the violation has not acted in bad faith is to grant the defendant a continuance giving him or her an opportunity to prepare for trial once the discovery materials have been made available. Thus, where the violation relates to discovery of potential trial evidence, the circuit court is advised to grant a continuance sufficient in duration to permit the defendant to obtain that evidence and to prepare for trial.

*State ex rel. Rusen v. Hill*, 193 W.Va. at 140–41, 454 S.E.2d at 434–35.

The lower court's order granting respondent Kinney's motion to suppress the shell casings and other evidence does not contain this necessary analysis. As noted, the circuit court relied erroneously on the *Osakalumi* case, which dealt with lost evidence, when deciding to sanction the State for discovery abuses. This misplaced reliance on *Osakalumi* led to a flawed decision on the part of the circuit court.

We are then left to analyze the lower court's ruling using the *Rusen* factors, as

they relate to the facts known to this Court through this limited record. Respondent Kinney timely requested production of the shell casings, as well as requested the right to inspect this physical evidence against him. He was unable to accomplish this task for well over a year. When the first discovery request was made, the shell casings had been to England for analysis as well as Texas. The casings were then analyzed by the State Police in West Virginia. It appears as though the West Virginia testing took almost a year.

During the pendency of this motion, respondent Kinney represents that his counsel continued to push for the production and inspection of this evidence. We have no reason to dispute the statements of counsel in that regard. However, when reviewing the limited record before us, we find that it was only after the State erroneously declared the evidence lost through the filing of a notice of lost evidence that respondent Kinney moved to dismiss the indictment, or in the alternative, to suppress the evidence. During that time when respondent Kinney's counsel was attempting to inspect the evidence, we find that during a majority of that time, the evidence was in the custody of a testing facility, presumably undergoing that testing. This would not appear to be a situation in which the evidence was being intentionally withheld. Rather, it is a situation of the testing appearing to take a long time to accomplish.

■ When faced with determining sanctions for discovery violations, our preference remains for trial courts to grant continuances in most cases. *Rusen,* 193 W.Va. at 140, 454 S.E.2d at 434 ("The preferred relief where the party responsible for the violation has not acted in bad faith is to grant the defendant a continuance giving him or her an opportunity to prepare for trial once the discovery materials have been made available."). In the present case, the shell casings were located and are now available for respondent Kinney's examination. We rec-

ognize that in some instances a continuance is not the best remedy because "there are some situations where a continuance is not an appropriate or satisfactory remedy." *Id.* at 141, 454 S.E.2d at 435. Discovery sanctions are discussed in Rule 16(d)(2) of the West Virginia Rules of Criminal Procedure. This rule states:

(2) Failure to comply with a request.—If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place and manner of making the discovery and inspection and may prescribe such terms and conditions as are just.

Based upon the record before us, we do not agree that the State acted in bad faith in its dealings with the shell casings. Through a series of missteps associated with the placement of the victim's name on the file instead of respondent Kinney's, the shell casings were not lost but were merely misfiled. Thus, we differ with the circuit court's finding that the Charleston Police Department and/or the Kanawha County Prosecutor's office's conduct was intentional designed to thwart the legitimate discovery requests of respondent Kinney. Instead, we believe the conduct was unintentional, and that the State made a reasonable effort to comply with respondent Kinney's discovery requests.

■ We are aware that at oral argument, respondent Kinney posited that his rights to a speedy trial may have been violated, and that this prosecution should be barred by the three term rule.[3] The subject order did not specifically address respondent Kinney's speedy trial rights, except to summarize how to determine when a defendant has been denied a trial without unreasonable delay. While the order cites *State v. El-*

---

**3.** W. Va.Code § 62–3–21 (1959) commonly called the "three term rule," provides that a person subject to an indictment or presentment must be tried within three terms of court unless certain

limited enumerated exceptions are satisfied. Counsel for Mr. Kinney alleged at oral argument that the third term of court for the purpose of the three rule had recently elapsed.

*swick,* 225 W.Va. 285, 693 S.E.2d 38 (2010), it is in Syl. pt. 2 of *State v. Foddrell,* 171 W.Va. 54, 297 S.E.2d 829 (1982), wherein we elaborate the following factors:

"A determination of whether a defendant has been denied a trial without unreasonable delay requires consideration of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his rights; and (4) prejudice to the defendant. The balancing of the conduct of the defendant against the conduct of the State should be made on a case-by-case basis and no one factor is either necessary or sufficient to support a finding that the defendant has been denied a speedy trial."

Syl. pt. 2, *State v. Foddrell,* 171 W.Va. 54, 297 S.E.2d 829 (1982).

Within the subject order, however, there is no analysis of these factors. We further note that the transcript of the hearing contains few references to respondent Kinney's speedy trial assertions and rights. In the body of the order itself, speedy trial is referenced as a heading on a portion of the order, but there is no discussion of speedy trial within the order. We conclude, therefore, that the issue of respondent Kinney's right to a trial within three terms is not properly before this Court in this writ of prohibition because the issue was never addressed in the proceeding below, and the circuit court's ruling was not based upon a denial of speedy trial.

We conclude that in order to correct the clear legal error on the part of the respondent judge in suppressing the evidence of the shell casings as well as the ammunition, magazine and firearms seized pursuant to a search warrant, we must grant this writ of prohibition. Without this writ, the State, who has no right to appeal a criminal conviction, may otherwise be without a remedy to correct this legal error.

## VI.

### CONCLUSION

For the foregoing reasons, we find that the petitioner is entitled to a writ of prohibition to prohibit the circuit court from suppressing the shell casings found at the scene of the crime as well as prohibiting the suppression of evidence seized from the search of Carol Bridges. We vacate the May 29, 2012, ruling of the Circuit Court of Kanawha County suppressing this evidence. We further direct that the mandate of this Court be issued forthwith.

**Writ granted.**