IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

No. 13-0144

**FILED**

**March 6, 2014**

**released at 3:00 p.m.**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

CURTIS JOSEPH KIMBLE,
Defendant Below, Petitioner

Appeal from the Circuit Court of Mason County
Honorable David W. Nibert, Judge
Criminal Action No. 12-F-20

AFFIRMED

Submitted: February 4, 2014
Filed: March 6, 2014

Rebecca Stollar Johnson, Esq.
Charleston, West Virginia
Attorney for Petitioner

Patrick Morrisey, Esq.
Attorney General
Julie A. Warren, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for Respondent

The Opinion of the Court was delivered PER CURIAM.
CHIEF JUSTICE DAVIS dissents and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1.    "When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below.  Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues.  Therefore, the circuit court's factual findings are reviewed for clear error."  Syl. Pt. 1, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996).

2.    "In contrast to a review of the circuit court's factual findings, the ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed *de novo*.  Similarly, an appellate court reviews *de novo* whether a search warrant was too broad. Thus, a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake has been made."  Syl. Pt. 2, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996).

i

3. "'Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment and Article III, Section 6 of the West Virginia Constitution–subject only to a few specifically established and well-delineated exceptions. The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption that the exigencies of the situation made that course imperative.' Syllabus Point 1, *State v. Moore,* 165 W.Va. 837, 272 S.E.2d 804 (1980), *overruled in part on other grounds by State v. Julius*, 185 W.Va. 422, 408 S.E.2d 1 (1991)." Syl. Pt. 20, *State v. Ladd*, 210 W.Va. 413, 557 S.E.2d 820 (2001).

4. "Athough a search and seizure by police officers must ordinarily be predicated upon a written search warrant, a warrantless entry by police officers of a mobile home was proper under the 'emergency doctrine' exception to the warrant requirement, where the record indicated that, rather than being motivated by an intent to make an arrest or secure evidence, the police officers were attempting to locate an injured or deceased child, which child the officers had reason to believe was in the mobile home, because of information they received immediately prior to the entry." Syl. Pt. 2, *State v. Cecil*, 173 W.Va. 27, 311 S.E.2d 144 (1983).

5. "A protective search is defined as a quick and limited search of premises for weapons once an officer has individualized suspicion that a dangerous weapon is present

and poses a threat to the well-being of himself and others. This cursory visual inspection is limited to the area where the suspected weapon could be contained and must end once the weapon is found and secured." Syl. Pt. 8, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996).

6.      "Neither a showing of exigent circumstances nor probable cause is required to justify a protective sweep for weapons as long as a two-part test is satisfied: An officer must show there are specific articulable facts indicating danger and this suspicion of danger to the officer or others must be reasonable. If these two elements are satisfied, an officer is entitled to take protective precautions and search in a limited fashion for weapons." Syl. Pt. 6, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996).

7.      "The existence of a reasonable belief should be analyzed from the perspective of the police officers at the scene; an inquiring court should not ask what the *police* could have done but whether they had, at the time, a reasonable belief that there was a need to act without a warrant." Syl. Pt. 7, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996).

8.      "'In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification a court must look to the

totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.' Point 3, Syllabus, *State v. Casdorph*, [159] W.Va. [909], 230 S.E.2d 476 (1976)." Syl. Pt. 2, *State v. Foddrell*, 165 W.Va. 540, 269 S.E.2d 854 (1980).

Per Curiam:

The petitioner herein and defendant below, Curtis Joseph Kimble, appeals the January 16, 2013, order of the Circuit Court of Mason County sentencing him to a five-year term of imprisonment for his jury conviction of one count of wanton endangerment.[1] In this appeal, the petitioner contends that the circuit court erred by denying his motions to suppress certain evidence. Upon consideration of the parties' briefs, oral argument and the submitted record, as well as the applicable authorities, this Court finds no error and affirms the final order.

## I. Factual and Procedural Background

On November 12, 2011, at 3:39 p.m., Daniel Granger called 911 and reported that shots had been fired at his vehicle as he was driving in the area of Poindexter Road and Ashton Upland Road[2] in Mason County, West Virginia. Mr. Granger described the perpetrator as a shirtless male wearing jeans and a black hat. Deputies C. A. Rhodes and R. A. Wilson of the Mason County Sheriff's Department responded to the call. They immediately went to the home of the petitioner, which is located at the intersection of the

_____

[1]According to the State's brief, the petitioner is currently on parole.

[2]It appears from the record that this road is sometimes referred to as John's Creek Road.

1

roads where the shooting occurred. Deputy Wilson had previously responded to reports of the petitioner shooting guns near his residence.[3]

Upon arrival at the petitioner's residence, Deputy Wilson announced that he was from the Sheriff's Department, pulled his gun,[4] and ordered the petitioner out of his home. The petitioner was told to lie on the ground, and after doing so, he was placed in handcuffs. At the time, the petitioner was wearing a shirt and blue jeans, but no hat. Deputy Wilson asked the petitioner where the shotgun was and the petitioner replied that it was just inside the front door. Deputy Wilson entered the petitioner's home, secured the shotgun,[5] and unloaded the weapon. Deputy Wilson then went back into the house and removed a black hat. Thereafter, the deputies placed the petitioner in the back of a police cruiser and drove him to Mr. Granger's residence. While the petitioner was sitting in the back of the police car, he was identified by Mr. Granger as the person who had fired shots at him.

The petitioner was indicted on one count of wanton endangerment in connection with the shooting incident. Prior to his trial, the petitioner filed motions to

---

[3]The perpetrator was never identified by name to Mason County 911.

[4]Deputy Rhodes also drew his gun.

[5]During the petitioner's trial, Deputy Rhodes testified that the barrel of the gun was warm when it was recovered, indicating that it had recently been fired. Deputy Wilson did not testify at the trial as he had left his employment with the Mason County Sheriff's Department and moved out of state.

2

suppress the following evidence: the statement by Deputy Wilson inquiring about the location of the gun and the petitioner's response; the H&R single shot, twelve gauge shotgun and the black hat seized from the petitioner's residence; and the out-of-court identification of the petitioner made by the victim. At the end of the suppression hearing, the court denied the motions except with regard to the black hat.[6] However, immediately prior to the start of the petitioner's trial, the court further ruled that the verbal exchange between Deputy Wilson and the petitioner concerning the location of the shotgun was inadmissible hearsay.[7]

The petitioner's jury trial was held on June 12, 2012, and he was found guilty of one count of wanton endangerment. He was sentenced to five years in prison, and this appeal followed.

## II. Standard of Review

In syllabus point one of *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996), this Court explained that

> [w]hen reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular

---

[6]The court ruled that any evidence obtained after the recovery of the shotgun was not admissible.

[7]The State sought to admit this evidence through the testimony of Deputy Rhodes because Deputy Wilson was not available to testify. *See supra* note 5.

3

deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

This Court further held in syllabus point two of *Lacy* that

> [i]n contrast to a review of the circuit court's factual findings, the ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed *de novo*. Similarly, an appellate court reviews *de novo* whether a search warrant was too broad. Thus, a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake has been made.

196 W.Va. at 107, 468 S.E.2d at 722. With these standards in mind, we consider the parties' arguments.

## III. Discussion

The petitioner raises two assignments of error. Each alleged error will be discussed, in turn, below.

### A. *Denial of Motion to Suppress the Shotgun*

The petitioner argues that the shotgun taken from his residence should not have been admitted into evidence at his trial because he was subjected to an unlawful arrest and an unreasonable search and seizure. In support of his argument, the petitioner relies upon

4

this Court's holdings in *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974). In syllabus point six of *Thomas*, this Court stated that "[e]vidence obtained as a result of a search incident to an unlawful arrest cannot be introduced against the accused upon his trial." *Id.* at 641, 203 S.E.2d at 448. This Court further held in *Thomas* that "'[e]xcept where authorized by law as incident to a lawful arrest, any search of a person or his dwelling on mere suspicion and the seizure of any article found as a result thereof, without an arrest warrant or a search warrant, is an unlawful search and seizure in violation of Section 6, Article 3 of the Constitution of West Virginia.' Syllabus Point 1, *State v. Smith*, [156] W.Va. [385], 193 S.E.2d 550 (1972)." 157 W.Va. at 640-41, 203 S.E.2d at 448, syl. pt. 5. The petitioner maintains that he was under arrest the moment the deputies put him in handcuffs and that the deputies had no probable cause to believe that he had committed the alleged offense at that time because he was not identified by name as the perpetrator during the 911 call and there were at least three other houses in the vicinity of where the shooting occurred.

Conversely, the State contends that the petitioner was not arrested until the shotgun was retrieved from his residence. The State says that given the nature of the alleged offense, the deputies detained the petitioner as a safety precaution and further conducted a search based on their belief that a dangerous weapon was present and posed a threat to themselves as well as anyone else who might have been in the area at that time. In other

5

words, the State argues that exigent circumstances, or more particularly, the emergency

exception to the warrant requirement, applies in this instance. We agree.

In syllabus point twenty of *State v. Ladd*, 210 W.Va. 413, 557 S.E.2d 820

(2001), this Court explained that

> "[s]earches conducted outside the judicial process, without prior
> approval by judge or magistrate, are *per se* unreasonable under
> the Fourth Amendment and Article III, Section 6 of the West
> Virginia Constitution–subject only to a few specifically
> established and well-delineated exceptions. The exceptions are
> jealously and carefully drawn, and there must be a showing by
> those who seek exemption that the exigencies of the situation
> made that course imperative." Syllabus Point 1, *State v. Moore,*
> 165 W.Va. 837, 272 S.E.2d 804 (1980), *overruled in part on
> other grounds by State v. Julius*, 185 W.Va. 422, 408 S.E.2d 1
> (1991).

We have noted that

> [e]xamples of recognized exceptions to the general warrant
> requirement include certain brief investigatory stops, searches
> incident to a valid arrest, seizures of items in plain view,
> searches and seizures justified by exigent circumstances,
> consensual searches, and searches in which the special needs of
> law enforcement make the probable cause and warrant
> requirements impracticable.

*State v. Farley*, 230 W.Va. 193, 197, 737 S.E.2d 90, 94 (2012). We have also stated "'[t]he

circumstances that justify warrantless searches include those in which officers reasonably

fear for their safety, where firearms are present, or where there is risk of a criminal suspect's

6

escaping or fear of destruction of evidence.'" *Lacy*, 96 W.Va. at 113, 468 S.E.2d at 728

(quoting *United States v. Mendoza-Burciaga*, 981 F.2d 192, 196 (5th Cir.1992)).


"[T]he emergency doctrine has been defined in various ways and must be

considered upon a case by case basis." *State v. Cecil*, 173 W.Va. 27, 32, 311 S.E.2d 144, 149

(1983). Generally,

> the emergency doctrine may be said to permit a limited,
> warrantless search or entry of an area by police officers where
> (1) there is an immediate need for their assistance in the
> protection of human life, (2) the search or entry by the officers
> is motivated by an emergency, rather than by an intent to arrest
> or secure evidence, and (3) there is a reasonable connection
> between the emergency and the area in question.

*Id.* More simply stated, "'[t]he Fourth Amendment does not require police officers to delay

in the course of an investigation if to do so would gravely endanger their lives or the lives

of others.'" *State v. Bookheimer*, 221 W.Va. 720, 729, 656 S.E.2d 471, 480 (2007)

(Maynard, J., dissenting) (quoting *Warden v. Hayden*, 387 U.S. 294, 298-299 (1967)).

Consequently, this Court held in syllabus point two of *Cecil* that

> [a]lthough a search and seizure by police officers must
> ordinarily be predicated upon a written search warrant, a
> warrantless entry by police officers of a mobile home was
> proper under the "emergency doctrine" exception to the warrant
> requirement, where the record indicated that, rather than being
> motivated by an intent to make an arrest or secure evidence, the
> police officers were attempting to locate an injured or deceased
> child, which child the officers had reason to believe was in the
> mobile home, because of information they received immediately
> prior to the entry.

7

173 W.Va. at 28, 311 S.E.2d at 146.

In this case, the deputies went to the intersection of the roads where it was reported that the shooting took place. While there are other homes in the same general vicinity, only the petitioner's residence is located at that intersection. The record indicates that the deputies approached the petitioner's residence with their weapons drawn not only because of the nature of the reported crime, but because Deputy Wilson had previously investigated reports of the petitioner discharging firearms outside of his residence. Thus, in order to protect themselves, as well as any other person in the area, the deputies notified the petitioner of their presence and requested that he come outside of his home. For the same reasons, the deputies immediately detained the petitioner and conducted a search for the shotgun.

Upon review, we find that these circumstances satisfied the emergency doctrine exception thereby allowing the deputies to conduct a warrantless search. Moreover, we further find that even absent the existence of exigent circumstances, the police officers were entitled to conduct a protective search.

> A protective search is defined as a quick and limited search of premises for weapons once an officer has individualized suspicion that a dangerous weapon is present and poses a threat to the well-being of himself and others. This cursory visual inspection is limited to the area where the

8

suspected weapon could be contained and must end once the weapon is found and secured.

*Lacy*, 196 W.Va. at 107, 468 S.E.2d at 722, syl. pt. 8. This Court explained in *Lacy* that

> [n]either a showing of exigent circumstances nor probable cause is required to justify a protective sweep for weapons as long as a two-part test is satisfied: An officer must show there are specific articulable facts indicating danger and this suspicion of danger to the officer or others must be reasonable. If these two elements are satisfied, an officer is entitled to take protective precautions and search in a limited fashion for weapons.

*Id*. at 107, 468 S.E.2d at 722, syl. pt. 6. We further held that

> [t]he existence of a reasonable belief should be analyzed from the perspective of the police officers at the scene; an inquiring court should not ask what the *police* could have done but whether they had, at the time, a reasonable belief that there was a need to act without a warrant.

*Id*. at 107, 468 S.E.2d at 722, syl. pt. 7.

While the petitioner was detained when Deputy Wilson conducted his search, at that juncture, the officers had no basis to know whether there was anyone else present, either inside or outside of the petitioner's residence. Further, they were responding to reports of gunfire in that area. At the suppression hearing, Deputy Rhodes testified as follows in response to questioning by the State:

> Q: On [November 12, 2011], you had occasion to respond to a dispatch from a 911 center to Ashton Upland Road, Milton area, Mason County?
>
> A: Yes.

9

Q: What was your reason for responding to that lotion [sic]?

A: Shots fired. Supposedly shots was [sic] fired at a person driving by in a vehicle.

Q: Did they tell you where and give you any indication regarding the person suspect [sic] of doing that?

A: They did. They said it was in the area of Curtis Kimble's residence. . . .

        . . . .

Q: What happened when you got there?

A: Deputy Wilson actually ordered him out of the trailer onto the ground.

Q: What do you mean ordered him out?

A: Mr. Kimble was inside the trailer.

Q: I understand that. What was said?

A: Mr. Kimble, come out of the trailer, this is the sheriff's department. Once he came out–

Q: In response to Deputy Wilson asking–

A: Mr. Kimble did come out.

Q: –Mr. Kimble to come out, he came out?

A: Yes.

Q: What happened when Mr. Kimble exited the trailer?

A: Deputy Wilson then ordered him to get on the ground, which he did and then after he did lay on the ground, I then cuffed him

10

just to secure the scene until we could figure out exactly what was going on.

Deputy Rhodes's testimony clearly satisfied the two-part test established in syllabus point six of *Lacy*. *See* 196 W.Va. at 107, 468 S.E.2d at 722. Accordingly, based on all the above, the circuit court did not err in refusing the petitioner's motion to suppress the shotgun.

### B. Denial of Motion to Suppress Identification

The petitioner also argues that the circuit court erred by allowing the jury to hear testimony regarding the out-of-court identification of the petitioner by the victim. This Court has held:

> "In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification a court must look to the totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Point 3, Syllabus, *State v. Casdorph*, [159] W.Va. [909], 230 S.E.2d 476 (1976).

Syl. Pt. 2, *State v. Foddrell*, 165 W.Va. 540, 269 S.E.2d 854 (1980).

The petitioner argues that when the totality of the circumstances is considered in his case, it is clear that the identification was not reliable and should have been suppressed.

11

In that regard, the petitioner notes that Mr. Granger testified at the suppression hearing that he saw the perpetrator make an obscene hand gesture at him as he drove by. He then heard a bang and looked in his rearview mirror and saw the perpetrator shooting at him. The petitioner points out that Mr. Granger did not specify how long he looked at the perpetrator or with what degree of attention; that Mr. Granger stated he had never seen the shooter before when he was questioned by the police, even though he had driven past the petitioner's home every day on his way to and from work; and that Mr. Granger did not describe the shooter with any great detail when he called 911 as he only reported that it was " a guy . . . wearing jeans, black hat no shirt . . . ." In addition, while acknowledging that the identification occurred within thirty minutes of the shooting, the petitioner contends that consideration must be given to the fact that he was presented to the victim exactly as the person described to 911, *i.e.,* a man wearing jeans; the only difference was that he was sitting in a police car and handcuffed.

The State contends that the petitioner is asking this Court to re-weigh the victim's testimony and substitute its judgment for that of the jury. The State maintains that the evidence established that the identification made by Mr. Granger was reliable. While Mr. Granger testified that he did not know the petitioner, he did state that he had previously seen him feeding chickens in his yard and had encountered him face-to-face one time when he dropped off a member of the petitioner's family at his home. Mr. Granger further testified

12

that he was certain the petitioner was the perpetrator when he identified him as he was seated in the back of the cruiser. Finally, the State points out the petitioner did not react to the identification by claiming that he was not the perpetrator, but instead he threatened Mr. Granger.[8]

The circuit court found that the out-of-court identification was, in fact, overly suggestive, but concluded Mr. Granger had sufficient independent knowledge of the petitioner to make the identification. In making that finding, the court noted that while Mr. Granger did not know the petitioner by name, he had seen him on multiple occasions. Further, the identification was made within twenty-five minutes of the shooting, and although the petitioner was wearing a shirt but not a hat, Mr. Granger was certain in his identification of the petitioner as the person who shot at him. Upon consideration of the totality of the circumstances and giving deference to the circuit court's factual findings, we are unable to conclude that the circuit court erred in refusing the petitioner's motion to suppress the out-of-court identification made by the victim.

---

[8]Mr. Granger testified that the petitioner was sitting in the police cruiser whistling and that after he made the identification, the petitioner said, "I'm crazy, I'll be out. I know where you live[.]"

13

## IV.  Conclusion

For the reasons set forth above, we find no merit to the petitioner's arguments.

Accordingly, the final order of the circuit court entered on January 16, 2013, is affirmed.

Affirmed.