# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

**June 15, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 17-0155** (Marion County CC-24-2015-F-143)

**Carlos A. Tilley,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Carlos A. Tilley, by counsel Jason E. Wingfield, appeals the order of the Circuit Court of Marion County, entered on January 23, 2017, sentencing him to a term of life imprisonment in the state penitentiary, with the possibility of parole, upon his conviction of delivery of a controlled substance within one-thousand feet of a school, and to a concurrent term of one to five years of imprisonment in the state penitentiary upon his conviction of conspiracy to commit a felony. Petitioner's life sentence resulted from application of the recidivist enhancement statute, West Virginia Code § 61-11-18. Respondent State of West Virginia appears by counsel Sarah B. Massey.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

I.

In July of 2015, a confidential informant for the Fairmont Police Department told a drug task force officer that she could purchase crack cocaine from Nathaniel Williams at his residence, which was within one-thousand feet of West Fairmont Middle School. Police obtained an order for electronic interception from a magistrate judge pursuant to West Virginia Code § 62-1F-4 to allow recording equipment to be placed on the informant, and arranged a controlled buy on the same date. The confidential informant telephoned Mr. Williams, but Mr. Williams did not answer that call. Police then searched the informant, equipped her with video recording equipment, and sent her into Mr. Williams's apartment with fifty dollars. Mr. Williams was not there, but six other individuals, including Kishon Yeagins and petitioner, were present. The informant asked if anyone in the apartment could provide her fifty dollars' worth of crack cocaine. One individual, later identified by the informant as petitioner, took the informant's cash, left the room, and returned with two small, blue bags of crack cocaine, which he handed to her. Based on those events ("the controlled buy" or "the controlled purchase"), officers obtained a

1

search warrant for the apartment and performed a search, but petitioner was not at the residence. Later, officers stopped Mr. Yeagins and petitioner in a car, wherein they found 27 small, blue bags of crack cocaine on Mr. Yeagins.[1] Both men were arrested. Officers later located a hotel where Mr. Yeagins and petitioner rented a room, and determined that cash from the controlled buy was used to pay for the room.

Petitioner was indicted on one count of delivery of a controlled substance within one-thousand feet of a school and one count of conspiracy to commit a felony. Petitioner filed a motion to suppress the recording obtained from the informant on the ground that the video was not time-stamped, and it was thus not clear that the electronic interception warrant was obtained prior to the informant's entry into the home. Petitioner also argued that Mr. Williams, the tenant of the target residence, was not home when the informant entered, and therefore did not give his consent for entry. Petitioner later filed a second motion to suppress, seeking the exclusion of the evidence obtained in the execution of the search warrant. The circuit court conducted a hearing at which Det. Lt. Douglas Yost of the Fairmont Police Department testified that it is standard practice to obtain an electronic interception warrant prior to engaging a controlled buy, and he believed standard protocol was followed in this situation. The circuit court denied the motions to suppress.

The circuit court conducted a jury trial in March of 2016. In addition to the testimony establishing the circumstances surrounding the controlled buy as described above, the State offered the testimony of Mr. Williams, at whose residence the buy occurred. Mr. Williams testified that he is a drug addict who allowed his friend Terris Lee to bring individuals to his home to sell crack cocaine, and that petitioner and Mr. Yeagins "appeared" at his home at Mr. Lee's behest up to a week before the controlled purchase.

Petitioner was convicted of both counts in the indictment. He filed a motion for judgment of acquittal or, alternatively, for a new trial, on the grounds that the State never established that petitioner was in possession of the crack cocaine and that the State failed to establish a conspiracy. The motion was denied.

Following the trial, the State filed a recidivist information, alleging the defendant was the same person who had been twice before convicted in the United States of crimes punishable by confinement in a penitentiary, and the court conducted a trial on that issue. A probation officer testified, relating petitioner's lengthy criminal history. The State also introduced, over the objection of petitioner, judgment orders from the United States District Court for the Eastern District of Pennsylvania and from the First Judicial District Court of Pennsylvania certifying petitioner's prior criminal convictions. The jury found petitioner guilty of recidivism, and petitioner was sentenced as described above.

II.

---

[1] One investigating officer later testified that the size and color of the packaging was unique.

On appeal, petitioner asserts five assignments of error. He argues that the circuit court erred in: 1) denying his motion to suppress the recorded evidence of the controlled purchase because the electronic interception warrant was insufficient; 2) allowing uncorroborated testimony from his co-conspirator without giving a curative instruction; 3) allowing a probation officer to testify about statements made by petitioner, thereby violating petitioner's Fifth Amendment rights; 4) admitting the judgment orders in support of petitioner's recidivist conviction; and 5) sentencing petitioner using the recidivist enhancement without requiring the State to prove that the predicate offenses were punishable by confinement in a penitentiary. Petitioner's assignments of error concern the circuit court's evidentiary rulings. Thus, unless stated otherwise below, we review pursuant to the following standard: "The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syllabus point 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W.Va. 435, 452 S.E.2d 893 (1994).

III.

A.

We first are called upon to determine the validity of the warrant that led to the recorded evidence used at trial and the court's subsequent denial of petitioner's motions to suppress the evidence derived therefrom. "'[A] circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake has been made.' Syl. Pt. 2, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996)." Syl. Pt. 2, in part, *State v. Kimble*, 233 W.Va. 428, 759 S.E.2d 171 (2014). In *Lacy*, we elucidated:

> When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error. *State v. Lilly*, 194 W.Va. 595, 461 S.E.2d 101 (1995). In contrast to a review of the circuit court's factual findings, the ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed *de novo. State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994).

*Lacy*, 196 W.Va. at 109, 468 S.E.2d at 724.

Before proceeding to the substantive issue, we must address a jurisdictional concern. The State argues that petitioner, a non-resident of the dwelling that was the subject of the search

3

warrant, had no expectation of privacy in Mr. Williams's home, and thus has no standing to challenge to the warrant.[2] The State disputes that petitioner produced evidence that he lived or slept at Mr. Williams's home, and particularly notes that petitioner and Mr. Yeagins had already rented a hotel room when arrested. Petitioner, on the other hand, argues that he was more than a "casual visitor" in Mr. Williams's apartment and hence is entitled to challenge the evidence pursuant to syllabus point 1 of *State v. Adkins*, 176 W.Va. 613, 346 S.E.2d 762 (1986)("A defendant who is more than a casual visitor to an apartment or dwelling in which illegal drugs have been seized has the right under the Fourth Amendment to the United States Constitution and Article III, Section 6 of the West Virginia Constitution to challenge the search and seizure of illegal drugs which he is accused of possessing.") We clarified this principle in *State v. Dorsey*, 234 W.Va. 15, 24, 762 S.E.2d 584, 593 (2014), wherein we explained that continued presence alone is insufficient to establish standing because, "a guest in a home must be welcomed by his host at the time of the government intrusion in order to have a reasonable expectation of privacy." The State argues that *Dorsey* is particularly germane because Mr. Williams's cocaine dependence was tantamount to coercion by Mr. Lee, who supplied him with drugs, and Mr. Lee's associates, including petitioner, were therefore not "welcomed" in the Williams home.

The burden of establishing standing to raise a Fourth Amendment challenge rests with the defendant. *See United States v. Salvucci*, 448 U.S. 83, 86–95, 100 S.Ct. 2547 (1980); *Rakas v. Illinois*, 439 U.S. 128, 130 n. 1, 99 S.Ct. 421 (1978). Petitioner offered no evidence concerning his stay at Mr. Williams's residence, and the only evidence about that arrangement was offered through the testimony of Mr. Williams. Importantly, Mr. Williams testified that he did not know petitioner's name at the time of the controlled buy, though either petitioner or Mr. Yeagins had been "there" about a week prior to the arrest, and the other joined the former two or three days later. Their appearance in his home was occasioned by Mr. Williams's arrangement with Mr. Lee, who periodically left people at Mr. Williams's home for the sole purpose of selling narcotics. Mr. Williams testified that Mr. Lee would "[j]ust give [him] a little coke for letting them work out of [his] house." There is no evidence in the appendix record on appeal that petitioner was in Mr. Williams's home for any reason other than his engagement in a nefarious criminal enterprise. The arrangement described by Mr. Williams is quite similar to that described in *Minnesota v. Carter*, 525 U.S. 83, 90, 119 S. Ct. 469, 473-74 (1998):

> Respondents here were obviously not overnight guests, but were essentially present for a business transaction and were only in the home a matter of hours. There is no suggestion that they had a previous relationship with [their host], or that there was any other purpose to their visit. Nor was there anything similar to the overnight guest relationship in [*Minnesota v.*] *Olson*, [495 U.S. 91,

---

[2] The State has not asserted that it challenged petitioner's standing when this issue came before the circuit court. This is inconsequential. "Standing is a jurisdictional requirement that cannot be waived, and may be brought up at any time in a proceeding." *Men & Women Against Discrimination v. Family Prot. Servs. Bd.*, 229 W.Va. 55, 60, 725 S.E.2d 756, 761 (2011) *quoting* Franklin D. Cleckley, Robin J. Davis & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 12(b), at 21 (Supp.2004).

110 S.Ct. 1684 (1990)] to suggest a degree of acceptance into the household. While the apartment was a dwelling place for [the host], it was for these respondents simply a place to do business.

The precedent cited by *Carter* supposes an expectation of privacy where one lodges overnight. *Olson*, 495 U.S. at 98-99, 110 S.Ct. 1684 ("To hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the every day expectations of privacy that we all share. Staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society.") It is unclear from the testimony in this case whether petitioner at any point lodged overnight in Mr. Williams's home and, inasmuch as he bears the burden of proving his standing, we need not assume that he did. Consequently, we need not consider whether his time in Mr. Lee's dwelling was of "longstanding social custom" that would inspire an expectation of privacy. The uncomplicated evidence is that Mr. Lee brought petitioner—whose name remained unknown to his host for nearly a week—to Mr. Williams's home to sell narcotics, and no social rapport was ever established between the two men. Accordingly, we find that petitioner had no expectation of privacy when he was in Mr. Williams's home for the same reasons explained in *Carter*: "[T]he purely commercial nature of the transaction engaged in here, the relatively short period of time on the premises, and the lack of any previous connection between [petitioner] and the householder, all lead us to conclude that [petitioner's] situation is closer to that of one simply permitted on the premises." *Carter*, 525 U.S. 83, 91, 119 S. Ct. 469, 474. Petitioner lacks standing to challenge the search of Mr. Williams's home, and we will proceed no further in analyzing the probable cause, or lack thereof, underlying the warrant.

B.

Petitioner's second assignment of error, verbatim, is that "[t]he . . . [c]ircuit [c]ourt erred or abused its discretion in allowing uncorroborated testimony regarding a co-conspirator to be communicated to the jury without curative instruction." This assignment of error refers to Mr. Williams, who allowed petitioner and Mr. Yeagins to stay in his home, where the recorded drug transaction occurred. Without Mr. Williams's testimony, petitioner argues, the evidence is insufficient to support his conviction of conspiracy. Regarding this, we note that

[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

5

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pts. 3 and 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Petitioner has failed to direct this Court's attention to the portion of the record where he requested (if, indeed, he did) a curative instruction. Pursuant to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, the argument section of the petitioner's brief "must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal." Furthermore, petitioner has not asserted that the circuit court's failure to give a curative instruction in conjunction with Mr. Williams's testimony was plain error. We thus deem this issue waived.[3]

C.

_____

[3] As stated in the body of this decision, petitioner's burden concerning sufficiency of the evidence is heavy. We also recognize that "[a] criminal conviction can be obtained on the uncorroborated testimony of an accomplice." Syl. Pt. 1, *State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423 (1980). In addition,

[w]here the testimony of an accomplice is corroborated in material facts which tend to connect the accused with the crime, sufficient to warrant the jury in crediting the truth of the accomplice's testimony, it is not error to refuse a cautionary instruction. This rule applies even though the corroborative evidence falls short of constituting independent evidence which supports the alleged ultimate fact that the accused committed the offense charged.

Syl. Pt. 3, *Vance*. We briefly note that the recorded evidence showed petitioner, in Mr. Williams's home, give crack cocaine to a confidential informant in exchange for cash, and the evidence further showed that officers found drugs (packaged in the same unique manner as those given by petitioner to the confidential informant) on Mr. Yeagins after a stop, and that petitioner and Mr. Yeagins shared a hotel room paid for with the cash used by the confidential informant. We have no reservations about the sufficiency of this evidence to establish criminal conspiracy. ""'In order for the State to prove a conspiracy under W.Va.Code, 61–10–31(1), it must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of that conspiracy." Syl. Pt. 4, *State v. Less*, 170 W.Va. 259, 294 S.E.2d 62 (1981).' Syl. Pt. 3, *State v. Burd*, 187 W.Va. 415, 419 S.E.2d 676 (1991)." Syl. Pt. 5, *State v. Minigh*, 224 W.Va. 112, 680 S.E.2d 127 (2009).

Petitioner's third, fourth, and fifth assignments of error implicate the evidence underlying his recidivist conviction pursuant to West Virginia Code § 61–11–18(c), which provides that "[w]hen it is determined . . . that [a] person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life."

Regarding the third matter on appeal, petitioner contends that the circuit court's allowing his probation officer to testify regarding petitioner's interview statements—introduced for the purpose of identifying him as a person previously convicted—constituted a violation of his federal Fifth Amendment privilege against self-incrimination.[4] Petitioner's "chief complaint is that the jury was exposed to testimony from [the probation officer] regarding [petitioner's] admissions of identity in a case where identity had not been proven." Petitioner correctly explains that certain elements of the probation officer's presentence investigation report reflect information about petitioner's education history gleaned from the officer's interview of petitioner. We agree with the State, however, that the probation officer's testimony reflects that the relevant identification of petitioner and the description of his criminal history was the fruit of the probation officer's search of the Interstate Identification Index, a database frequently used by law enforcement officers, and not the fruit of custodial interrogation.[5] Petitioner's Fifth Amendment rights were not violated, and the circuit court did not err.

---

[4] Again, there is no indication before us that this issue was raised with the circuit court. In this instance, however, petitioner has characterized the assigned error as "clear and plain" and though he expounds little upon this statement, we will consider this a request that we apply the plain error doctrine. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). As explained in the body of this decision, there is no error and we need not proceed beyond the first prong in this analysis.

[5] Custodial interrogation brings about "inherently compelling pressures" (*Miranda v. Arizona*, 384 U.S. 436, 467, 86 S.Ct. 1602 (1966)), thought to "induce a frighteningly high percentage of people to confess to crimes they never committed" (*Corley v. United States*, 556 U.S. 303, 320, 129 S.Ct. 1558, 1570 (2009)). There is no evidence that the routine probationary interview to which petitioner submitted rises to such a level, or that it would it would be characterized as such under the considerations we have announced:

> The factors to be considered by the trial court in making a determination of whether a custodial interrogation environment exists, while not all-inclusive, include: the location and length of questioning; the nature of the questioning as it relates to the suspected offense; the number of police officers present; the use or absence of force or physical restraint by the police officers; the suspect's verbal and nonverbal responses to the police officers; and the length of time between the questioning and formal arrest.

Syl. Pt. 2, *State v. Middleton*, 220 W.Va. 89, 640 S.E.2d 152 (2006).
(continued . . .)

D.

We turn to petitioner's fourth assignment of error, wherein he argues that the circuit court erred in admitting documentary evidence—that is, judgment orders from other jurisdictions—certifying prior criminal convictions in support of his recidivist conviction.[6] Petitioner contends, without citing legal authority, that the State failed to lay a proper foundation showing that the investigating officer through whom the records were introduced was a custodian of the documents or that he otherwise had "personal knowledge of the identification processes." However, when overruling defense counsel's trial objection on this matter, the circuit court specifically explained that the proffered judgments were domestic public documents under seal, and petitioner does not dispute that characterization. Such documents are self-authenticating pursuant to Rule 902(1) of the West Virginia Rules of Evidence.[7] We explicated the meaning of "self-authenticating" last year in *State v. Boyd*, 238 W.Va. 420, 446, 796 S.E.2d 207, 233 (2017), wherein we cited *People v. Wiedemer*, 641 P.2d 289, 291 (Colo. App. 1981)(Documents, including court judgments "duly self-authenticated by a public seal, were properly admitted without oral testimony.") When a document the court deems self-authenticating under Rule 902 is proffered, the proponent is relieved of the requirement to lay foundation through a witness. The circuit court committed no error in so finding.

E.

Finally, we reach petitioner's fifth assignment of error. He contends that the circuit court lacked jurisdiction to apply the recidivist enhancement because the State failed to make the requisite showing announced in the syllabus of *State v. McMannis*, 161 W.Va. 437, 242 S.E.2d 571 (1978):

> Where a prisoner being proceeded against under the habitual criminal statute remains silent or says he is not the same person who was previously convicted and sentenced to the penitentiary offense or offenses alleged in the information, a circuit court has no jurisdiction to impose an enhanced sentence under the statute where the State fails to prove beyond a reasonable doubt that each penitentiary

---

[6] The judgment orders, though fundamental to at least one of petitioner's assignments of error, are inexplicably omitted from the appendix record on appeal.

[7] That rule specifies that extrinsic evidence of "authenticity as a condition precedent to admissibility is not required" for:

> (1) *Domestic public documents under seal*. A document bearing a seal purporting to be that of the United States, or of any state, district, commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.

offense, including the principal penitentiary offense, was committed subsequent to each preceding conviction and sentence.

More specifically, petitioner asserts that "the State did not prove that [petitioner's] Pennsylvania state court convictions for possession of a firearm subjected him to punishment in a penitentiary prior to his subsequent conviction in [f]ederal [c]ourt for the same offense[]." Petitioner, in other words, argues that the State introduced insufficient evidence to support his recidivist conviction. Again, we note:

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. Pt. 3, *Guthrie*. The State correctly avers that it introduced at trial no evidence of a state firearms conviction. Petitioner did not dispute that assertion in his reply brief. Our consideration of this matter could thus end here, inasmuch as petitioner has failed to surmount the "heavy burden" described in *Guthrie*.

However, recognizing that petitioner's lengthy criminal history lends to potential confusion, we are compelled to delineate the timeline that establishes petitioner's recidivism. Det. Lt. Yost testified about his review of petitioner's background. Together with the self-authenticating judgment orders described in the preceding section, Det. Lt. Yost's testimony established that petitioner was arrested in May of 2004 and subsequently convicted in October of 2004 on the state felony offense of possession with intent to deliver a controlled substance ("the first offense"); arrested in April of 2005 and subsequently convicted in November of 2008 on the state felony offense of possession with intent to deliver or manufacture crack cocaine ("the second offense"); arrested in June of 2006 for the state offenses of aggravated assault and illegal possession of a firearm, and subsequently convicted in March of 2008 on only the felony aggravated assault charge ("the third offense"); and charged on some unspecified date with two federal felony offenses of being a prohibited person in possession of a firearm, which prompted a plea bargain conviction on one of those charges ("the fourth offense"). Det. Lt. Yost testified that each felony of which petitioner was convicted was punishable by confinement in a penitentiary. His testimony establishes that petitioner's second offense was committed subsequent to his conviction on the first offense. His testimony further established that petitioner's present felony conviction—that is, the statutorily-described "principal penitentiary offense"—was committed after his conviction of the second offense. The progression of these three offenses, without question, satisfies the recidivist enhancement prerequisite set forth in West Virginia Code § 61-11-18:

When it is determined, as provided in section nineteen of this article, that [a person convicted of an offense and is subject to confinement in the state correctional facility therefor] shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life.

The jury having been presented with the unassailable evidence of the timeline of these convictions and having deemed petitioner a recidivist offender, the circuit court was within its jurisdiction to attach the recidivist enhancement to petitioner's sentence.[8]

---

[8] Petitioner's fifth assignment of error rested entirely, as described in the body of this decision, on his assertion that two of his convictions grew from his possession of a firearm, and thus could not be considered separate predicate offenses because they arose from the same criminal transaction. We reiterate petitioner's precise assertion: "The State did not prove that [petitioner's] Pennsylvania state court convictions for possession of a firearm subjected him to punishment in a penitentiary prior to his subsequent conviction in [f]ederal [c]ourt for the same offense[]." As the State pointed out, that was not the case. The evidence proffered at trial and contained in the appendix record on appeal shows no conviction for any state firearms offense.

Nevertheless, we are reluctant to consider petitioner's third or fourth offenses (aggravated assault and being a prohibited person in possession of a firearm, respectively) as predicate due to the uncertain details of those convictions. First, Det. Lt. Yost testified that petitioner was convicted of the third offense (aggravated assault) in March of 2008. But based on Det. Lt. Yost's testimony, petitioner was not convicted of the second offense (possession with intent to deliver a controlled substance) at the time of his arrest for that offense, because the second offense conviction was not completed until November of 2008. The third offense thus does not appear to conform to our explanation in *McMannis* that any qualifying predicate offense be proven to have been committed subsequent to the preceding conviction and sentence. *McMannis*, 161 W.Va. at 437, 242 S.E.2d at 572-73. Second, Det. Lt. Yost testified that petitioner was "charged as a prohibited person [in possession of a firearm] based on his prior felony convictions," and it is not clear whether the detective meant that petitioner's status as a prohibited person was based on the earlier offenses or that he was in possession of firearms when arrested for the earlier offenses and consequently charged with the fourth offense. This uncertainty also casts doubt on the satisfaction of *McMannis*. Third, Det. Lt. Yost testified that petitioner's sentence for the third offense (the state offense of aggravated assault) was ordered to run concurrently with his sentence for his fourth offense (the federal offense of being a prohibited person in possession of a firearm). Accordingly, we are left wondering whether petitioner entered into state and federal plea agreements in a tandem arrangement or, at least, close in time. The date of conviction for petitioner's fourth offense is not readily apparent on the face of the record and neither party has provided that information. We nevertheless recognize that consideration of the third and fourth offenses as predicate for recidivist purposes may approach precarious terrain, in light of our prior pronouncement that "multiple convictions on the same day are treated as one conviction for purposes of enhancing any subsequent felony (continued . . .)

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 15, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Loughry, Allen H., II suspended and therefore not participating.

---

convictions." *Turner v. Holland*, 175 W. Va. 202, 203, 332 S.E.2d 164, 166 (1985) *citing State ex rel. Hill v. Boles*, 149 W.Va. 779, 143 S.E.2d 467 (1965).

Despite the uncertainty surrounding the third and fourth offenses, however, and as explained in the body of this decision, the evolution of petitioner's first, second, and principle penitentiary offenses indisputably meets the recidivism criteria described in *McMannis*. Moreover, petitioner has not assigned error to the considerations related herein, and we have undertaken this evaluation only to aid our disentanglement of the qualifying predicate offenses from the whole of petitioner's criminal past.

11