**UNITED STATES of America, Appellee,**

v.

**Betty D. PEED, Appellant.**

**No. 82–5192.**

United States Court of Appeals,
Fourth Circuit.

Argued March 11, 1983.

Decided Aug. 4, 1983.

---

8

Steven D. Kupferberg, Lanham, Md. (Greenan, Walker, Kupferberg & Trainor, Lanham, Md., on brief), for appellant.

Glenda G. Gordon, Asst. U.S. Atty., Baltimore, Md. (J. Frederick Motz, U.S. Atty., Baltimore, Md., on brief), for appellee.

Before WINTER, Chief Judge, ERVIN, Circuit Judge, and ALDRICH,* Senior Circuit Judge.

ERVIN, Circuit Judge:

Betty Peed appeals her conviction for eight counts of mail fraud, 18 U.S.C. § 1341, and for two counts of making false statements to the government, 18 U.S.C. § 1001. We find no merit in her contentions on appeal and affirm.

### I.

Mrs. Louise Stasko of Richmond, Virginia was, until the fall of 1980, the owner of a valuable collection of dolls. Financial necessity caused her to seek a buyer for her collection in 1980. Through a friend, Stasko was introduced to the appellant, Betty Peed, a resident of Brandywine, Maryland. Peed first visited Stasko at her Richmond home on October 3, 1980. Peed impressed Stasko as a wealthy and knowledgeable collector of dolls. At the end of this initial meeting, Peed bought several dolls from Stasko for approximately $2,200 which Peed paid for partly in cash and partly by check.

After returning to Maryland, Peed called Stasko and offered to purchase the entire collection of dolls, valued at about $30,000. Stasko agreed. Peed proposed that a "test shipment" of dolls be sent by Stasko by registered mail to determine the transit time between Richmond and Brandywine. Peed promised to send a check in the amount of $495.00 on receipt of the test shipment. This transaction went smoothly.

Peed next requested several more shipments of dolls. Although Stasko preferred the services of the United Parcel Service, Peed insisted that the packages be sent by registered mail. Stasko consented, and between intermittent periods of poor health, she undertook to box up the bulk of her collection for shipment to Peed. One box was mailed on October 16. A second box was mailed on October 21. Six more packages—five sturdy cartons and one lighter carton—containing most of the rest of Stasko's collection were mailed to Peed on November 3.

Peed received the last shipment on November 5. As of that date, no payment had been made by Peed for any of the prior eight shipments.

Stasko soon after called to tell Peed that her health had become too poor to permit her to do any more packing, so that Peed would have to come personally to take possession of the remainder of the dolls. Peed agreed to travel to Richmond on November 11 and promised to bring along payment for the prior shipments. When Peed arrived in Richmond, however, she produced no payment, but tendered an I.O.U. to Stasko in the amount of $27,640.00 and took possession of several more boxes of dolls.

A few days later Peed told Stasko on the telephone that she intended to deposit the full sum owed directly into Stasko's bank account. However, no deposit was ever made. On November 16, Peed sent her daughter to Richmond to pick up the last of the dolls.

* Honorable Bailey Aldrich, Senior United States Circuit Judge for the First Circuit, sitting by designation.

Meanwhile, unbeknownst to Stasko, Peed had called the Brandywine post office on November 10 to report that the first of the six boxes received by her by registered mail on November 5 was found to be empty, and that she wished post office employees to witness the unpacking of the remaining five boxes. On November 12, the boxes were opened at the post office and found to contain only packing paper. Subsequent examination revealed that the boxes had been opened once from the bottom and re-sealed. The tampering evidently took place after the parcels were mailed from Virginia, because the tape resealing the packages had been placed over the registered mail stamps affixed to the boxes in Richmond. Also, the amount of postage on each carton indicated that each box weighed less when returned to the Brandywine post office than it had when mailed in Richmond.

On November 18, after Peed's daughter had taken possession of the last of Stasko's dolls, Peed called Stasko to inform her of the "stolen" dolls. Peed eventually indicated that all eight of the doll shipments had arrived empty, whereupon Stasko submitted eight indemnity applications to the U.S. Postal Service for her lost dolls. The applications were forwarded to Peed, who declared in writing that the boxes had arrived "without contents" or "contents empty."

In an attempt to recover her dolls, Stasko enlisted the aid of Maryland law enforcement authorities, who equipped her with secret recording devices. Two conversations with Peed were recorded in the winter and spring of 1981 in which Peed made incriminating statements.

Peed was eventually indicted, tried and convicted by a jury on eight counts of mail fraud and two counts of making false statements to government officials.

## II.

■ Peed's first argument on appeal is that a secretly recorded telephone conversation between Peed and Stasko on April 7,

1981 was improperly admitted into evidence at trial.[1] In this conversation Stasko implored Peed to return her dolls. Peed responded

> You're the one that pressed the charges, will you drop the charges? ... If you want the dolls back and but [sic] I want your word that everything will be dropped.

Peed characterizes these statements as an offer to compromise a civil claim, which under Fed.R.Evid. 408 cannot be introduced as evidence of liability. Rule 408 states:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount .... This rule ... does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

The government responds that Peed's statements were not an offer to compromise, but were more akin to "an effort to obstruct a criminal investigation." *Id.*

The trial judge in essence agreed with the government's suggestion that Peed spoke up in order to head off criminal prosecution, though the judge did not go so far as to find that the offer was "an effort to obstruct a criminal investigation." Terming Peed's language a "halfhearted suggestion of a settlement," the court clearly felt that Peed's statement did not rise to the dignity of an offer to compromise a civil claim for purposes of Fed.R.Evid. 408.

We agree with the district court's characterization of Peed's statements as an attempt to avoid criminal prosecution, not as an effort to resolve a civil claim. There was no civil suit pending at the time this conversation took place. Peed's jargon

1. Peed also attacks evidence of a January 29 conversation between the two women; it was

Peed herself, however, who introduced this evidence at trial.

("drop the charges") implies concern over criminal prosecution. These were not negotiations aimed at settling a civil claim, negotiations that the policy behind Rule 408 seeks to encourage. Nor were Peed's statements followed up by any attempt on her part to obtain money or resources for achieving a settlement with Stasko. *See United States v. Meadows,* 598 F.2d 984 (5th Cir.1979).

Furthermore, Peed's disclosures on the April 17 tape are highly probative on the question of whether Peed had possession of Stasko's dolls, which Peed previously denied before the grand jury. The prejudicial impact of this evidence is great, but not obviously greater than its probative value. Fed.R.Evid. 403. The district court did not abuse its discretion in admitting this evidence.

### III.

Peed next complains that the jury was improperly told that she had been the "target" of an investigation by the U.S. Attorney leading up to grand jury proceedings. The government claims to have introduced this testimony in order to show that Peed, who was told at the grand jury hearing that she was a "target," testified voluntarily and not under subpoena.

Although we fail to see the relevance of this evidence, we find no prejudice amounting to reversible error. Criminal investigation leading to grand jury inquiry culminating in indictment inherently casts a shadow over a defendant. A jury is not prejudiced by learning that an individual, since indicted, was at one time under investigation. Nor does the record reflect, as Peed would contend, that the "target" language demonstrated the U.S. Attorney's personal belief in Peed's guilt. He never said "Mrs. Peed, I believe you took those dolls."

### IV.

At trial the government sought to cross-examine Peed concerning prior doll deals with other elderly women in an attempt to impeach her credibility and to show, under Fed.R.Evid. 404(b), common motive and criminal scheme. The trial court, over Peed's objection, permitted questions concerning a transaction with one Mrs. Harris, and allowed letters from Peed to Harris to come into evidence, but the court blocked the government's inquiry into another transaction with two women named Tracy and Fain. In its rebuttal case, the government sought to introduce the testimony of Fain, but the court refused to allow it and also granted a motion to strike Peed's testimony on cross-examination regarding the Harris transaction. The court's rationale for purging evidence of other bad acts was that the prejudicial effect of such evidence outweighed its probative value. Fed.R.Evid. 403. The court admonished the jury to ignore the stricken testimony.

Both sides assert error in the court's actions—the defendant, for letting the evidence emerge at all; the government, for striking it.

We find no abuse of discretion in the district court's handling of this evidence. As to Peed, we are satisfied that the court removed any possible prejudicial effect of the testimony of the Harris incident with its curative instruction to the jury. As for the government, it was reasonable for the trial court to conclude that the testimony was unfairly prejudicial, notwithstanding its utility under Fed.R.Evid. 404(b).

### V.

Peed contends that statements by the government's attorney during closing argument warrant a new trial. The assistant U.S. Attorney first argued that if the jurors were dissatisfied with the government's handling of the case, they should write the U.S. Attorney's office. The statement was made in response to defense counsel's remarks during the course of the trial that postal inspectors acted improperly in the investigation of Peed. Upon defense counsel's objection, the judge struck this statement and ordered the jury to ignore it. Such instruction cured any possible undue effect of this extralegal comment.

Secondly, Peed claims that the government made improper reference in rebuttal argument to testimony regarding other bad acts (the Harris and Tracy-Fain transactions), testimony which the court had excluded. At the time these references were made, objection was noted and the district court gave a cautionary instruction to the jury. We have read the relevant portions of the trial transcript, and we are satisfied that any transgression which occurred was remedied by the court's cautionary instruction.

## VI.

Finally, Peed argues that the evidence was insufficient to support conviction. However, taking the accumulated evidence in the light most favorable to the government, a jury could readily conclude beyond a reasonable doubt that Peed deliberately used the mails to defraud Stasko of her doll collection, and that she made false statements to a government agency.

## VII.

The convictions are affirmed.

AFFIRMED.